Cynthia Lee WHITAKER Plaintiff.

v.

TITMUS OPTICAL, INC. Defendant.

No. CIV.A. 3:02CV96.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 7, 2002.

Cynthia Lee Whitaker, Petersburg, VA, pro se.

Vickey Ann Verwey, David R. Simonsen, Jr., Richmond, VA, for plaintiff.

Lynn Forgrieve Jacob, James Vincent Meath, Aaron Scott Walters, Williams Mullen PC, Richmond, VA, for defendant.

### MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgment. For the reasons discussed below, the Defendant's Motion is GRANTED.[1]

## I.

On February 15, 2001, Plaintiff Cynthia Whitaker filed the instant action against her former employer, Titmus Optical, alleging that Titmus fired her on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Titmus is a manufacturer of eyeglass frames and Ms. Whitaker was employed in its Petersburg plant as a spray room utility/apprentice and a spray room operator. Ms. Whitaker's duties consisted primarily of assisting in the painting of the eye-glass frames, overseeing the drying of the frames, and inspecting the quality and consistency of the finished painted frames. Titmus asserts that it fired Ms. Whitaker pursuant to its progressive disciplinary system under which an employee is issued a written warning for her first failure to produce adequate work, a two day suspension for the second violation, and termination upon the third violation.

Ms. Whitaker asks this Court to enter judgment in her favor and to award her $500,000 in compensatory damages, $500,000 in punitive damages, and "such other and further relief as is proper." Amended Complaint at ¶ 16. Titmus responds that it acted on the basis of legitimate, non-discriminatory reasons and that race was not a motivating factor in any of its employment related decisions. After conducting discovery, Titmus argues that there is no genuine issue as to any material fact of Ms. Whitaker's claims, and there-

---

1. Titmus also filed a Motion to Dismiss Plaintiff's Second Amended Complaint for failure to allege federal subject matter jurisdiction, and a Motion to Compel Discovery. Ms. Whitaker began this action without counsel and filed her original Complaint pro se which failed to allege federal subject matter jurisdiction. Once she obtained counsel, he filed the First Amended Complaint which properly alleged federal subject matter jurisdiction. Ms. Whitaker is now again proceeding pro se, and in view of her status, this Court will construe her second amended complaint as incorporating the proper jurisdictional allegation from the First Amended Complaint. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring courts to liberally construe the pleadings of pro se litigants). Therefore, Titmus' Motion to Dismiss is denied.

Defendant's Motion to Compel Discovery is rendered superfluous by favorable resolution of this Motion for Summary Judgment, and is therefore denied.

fore, makes this Motion for Summary Judgment.

## II.

Under Rule 56(b) of the Federal Rules of Civil Procedure, a court considering a motion for summary judgment must consider the entire record in the light most favorable to the non-moving party. To succeed on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that it is therefore entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of demonstrating a failure to prove a material element, but, if that burden is met, the non-moving party must then set forth specific facts to prove the existence of a genuine issue of material fact. *Id.* Titmus submits that there are no material facts in dispute.

An employment discrimination claim under either Title VII or Section 1981 is evaluated under the burdens-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Karpel v. Inova Health Sys. Serv.,* 134 F.3d 1222, 1227 (4th Cir.1998) (applying the *McDonnell Douglas* standard in a Title VII claim). Under *McDonnell Douglas* the plaintiff must first put forth probative evidence indicating that the employer intentionally discriminated against her because of her race. One manner in which a Plaintiff may demonstrate discriminatory intent is through direct evidence, such as an employer admitting that race was a determining factor in its decision. *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.1985). Lacking direct evidence, a plaintiff may prove discriminatory intent through circumstantial evidence. *Karpel,* 134 F.3d at 1227–28. The circumstantial evidence must be sufficient to establish by a preponderance of the evidence a prima facie case of "comparative disparate treatment." A showing of "comparative disparate treatment" consists of evidence that: 1) Plaintiff is a member of a protected class; 2) she was qualified for her job and her performance was satisfactory; 3) she was subjected to adverse action (termination); and 4) other employees who are not members of the protected class were retained under apparently similar circumstances. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir. 1995). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the dismissal. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer can articulate such a reason, the burden shifts back to the plaintiff to prove that the reason given was just a pretext for discrimination. *Taylor v. Virginia Union University,* 193 F.3d 219, 230 (4th Cir.1999).

In its Motion for Summary Judgment, Titmus must show that the Plaintiff has failed to put forth probative evidence, either circumstantial or direct, that Titmus intentionally discriminated against her because of her race. Ms. Whitaker has offered no direct evidence that Titmus fired her for discriminatory reasons. She has not alleged that any Titmus employee told her, or in any way indicated, that race factored into her termination. Her only argument in support of her claim is circumstantial. Ms. Whitaker alleges that Titmus failed to discharge a similarly situated white employee named Marie Boyle for the same substandard performance for which it discharged Ms. Whitaker, and that Titmus replaced Ms. Whitaker with a white male named Charles. Titmus responds, first, that Marie Boyle was a spray

room leader who was above Ms. Whitaker in the chain of command and was thus not similarly situated; and second, that Ms. Whitaker stated in her deposition that she thought Titmus did not fire Ms. Boyle for a potential third violation because she was the only spray room leader at that time and they could not afford to lose her. Therefore, even assuming that Ms. Boyle was deserving of disciplinary action, according to Ms. Whitaker's own testimony, Titmus' alleged differing treatment of Ms. Whitaker and Ms. Boyle was not for discriminatory reasons.[2] Titmus argues that this sole piece of circumstantial evidence which Ms. Whitaker puts forward is insufficient to establish a prima facie case and proceed beyond the first burden that *McDonnell Douglas* establishes.

Assuming that Ms. Whitaker has established a prima facie case, Titmus submits that it has met its burden of articulating a legitimate non-discriminatory reason for her termination; namely, that Ms. Whitaker was fired pursuant to Titmus' standard disciplinary process for three incidents of unacceptable performance. In its Memorandum in Support of its Motion for Summary Judgment, Titmus details its application of the disciplinary process to Ms. Whitaker. Titmus submits that Ms. Whitaker's first violation was for ignoring company policy which requires employees to ask their supervisor if they are unsure whether their work meets quality standards, and if a supervisor is not then available, the employee is instructed to stop painting frames until the concern is addressed. Policy requires an employee to paint a sample frame and compare it to the standard of quality before proceeding to paint an entire order of frames. On Au-

gust 21, 2000, Ms. Whitaker painted an order of frames, noting that the frames were at times turning out shinier than the standard. Ms. Whitaker admits that she was unsure about the quality of the painting, but proceeded anyway. Continuing to paint frames when one has concern about their quality is grounds for discipline. The next day, her supervisor determined that the frames were non-compliant and would have to be repaired and repainted. Pursuant to its progressive disciplinary system, Titmus then issued Ms. Whitaker a written warning for this first offense.

Ms. Whitaker's second violation occurred on September 22, 2000. On that day, Ms. Whitaker painted, cured, and baked several orders of frames. Once the process was complete, Ms. Whitaker failed to detect a quality defect which occurred in about one-third of the frames. They were sent to another department for completion of the manufacturing process where the defect was discovered. This being her second violation, Titmus suspended Ms. Whitaker for two days. Ms. Whitaker denies fault for the substandard frames and claims that it was Ms. Boyle who actually painted the frames and should have detected the defect. Ms. Whitaker claims that the blame was placed on herself because this incident would have been Ms. Boyle's third disciplinary action and would have resulted in her termination according to company policy, and the loss of their only spray room leader.

Titmus terminated Ms. Whitaker on February 15, 2001 for her third infraction of failing to follow quality assurance standards. According to Titmus, on February 13, 2001, Ms. Whitaker painted a first cart

---

**2.** Titmus also notes that Ms. Whitaker has not demonstrated a pattern suggesting that Titmus discriminates against African–American employees in its disciplinary process. Titmus submits that 64% of its workforce is African– American and that 38% of the employees it disciplined in the proceeding year were white. Therefore, the evidence demonstrates that Titmus is actually marginally harder (by 2%) on whites in the disciplinary process.

of frames, which contained three or four orders. She then inspected the frames and began curing them. While the first cart was curing, Ms. Whitaker began painting a second cart of frames. After curing the first cart, Ms. Whitaker began baking the frames. When the first cart came out of the oven, she noticed that 30% of the frames had what appeared to be paint that had run, which was now dry from the baking. This constituted a defect in the frames. The second cart resulted in the same defect in 30% of the frames. Mr. Setaro, her supervisor, believed that the defects were due to the application of extra paint which Ms. Whitaker should have detected before baking the frames.[3] Titmus terminated Ms. Whitaker for this third infraction of preparing non-compliant frames.

Ms. Whitaker asked that the Union grieve her termination. Union representatives met with Titmus management and discussed the situation. Union representative Vaughan acknowledged that Ms. Whitaker had produced inadequate work and that the termination was for just cause and withdrew the grievance. Titmus submits that the disciplinary proceedings, including the three citations and the grievance, were at all times conducted according to standard company procedures.

■ Titmus argues that Ms. Whitaker has failed to set forth a prima facie case of racially discriminatory treatment. As Titmus notes, Ms. Whitaker challenges Titmus' application of the disciplinary process to her by arguing that she either was not responsible for certain defects in the frames or that there was a misunderstanding as to the number and extent of the defects. She does not allege that Titmus charged her with infractions for racially discriminatory reasons or that similarly situated employees committed similar infractions for which they were not disciplined. Furthermore, she does not allege or demonstrate that Titmus' facially neutral application of the disciplinary process was a pretext to fire her for discriminatory reasons. Therefore, all available evidence indicates that Titmus' decision to terminate Ms. Whitaker was the result of legitimate, non-racial, business practices.

It is evident to the Court that Ms. Whitaker takes pride in her job performance and that she feels she was a capable employee who produced quality work for Titmus. In sum, she disagrees with Titmus' assessment of her performance and feels that they treated her unfairly. She fails to show, however, that Titmus treated her unfairly for racial reasons. This Court does not sit in judgment of the day-to-day decisions of this Nation's businesses. Only when an employer acts on impermissible motives, such as racial discrimination, will the courts interfere. In short, whether or not Titmus fairly or accurately assessed the quality of Ms. Whitaker's work is beside the point. Ms. Whitaker has brought this claim of racial discrimination and the survival of this action, therefore, depends on her making a prima facie showing that Titmus fired her for racially discriminatory reasons. She has failed to set forth any facts which facially demonstrate, or even portend, racial motivation on the part of Titmus.

### III.

■ Ms. Whitaker's only allegations of mistreatment are that Ms. Boyle was responsible for one instance of substandard work for which Ms. Whitaker was blamed, and that it was not her duty to detect the type of defect for which she was cited in

---

**3.** Mr. Setaro was, however, under the erroneous impression that all of the frames that Ms. Whitaker prepared that day were defective, when in actuality only 30% were defective. Setaro Affidavit at ¶ 25.

her third violation. Neither of these allegations, even if true, indicate that Titmus fired her for a discriminatory reason. Furthermore, Titmus' application of their progressive disciplinary system to Ms. Whitaker constitutes a legitimate non-discriminatory justification for her termination, which she has failed to reveal as a pretext for discriminatory firing. Titmus has proven the negative that Ms. Whitaker has failed to put forth probative evidence of employment discrimination, therefore the Defendant's Motion for Summary Judgment is hereby GRANTED.

Ms. Whitaker is hereby notified that she has 30 days from entry of judgment in which to appeal the decision of this Court.

An appropriate Order shall issue.